IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| PRINCESS CRUISE LINES, LTD. | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil No.: 4:24-cv-00745 |
| VS | § | |
| WALLTOPIA ADVENTURE USA, LLC, | § | |
| WALLTOPIA AD, and SAFETY | § | |
| ENGINEERING OOD | § | |
| | § | |
| Defendant. | § | |
| | § | |

### DEFENDANTS WALLTOPIA AD AND SAFETY ENGINEERING OOD'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(b)(2) AND ALTERNATIVE MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO RULE 12(b)(6) AND BRIEF IN SUPPORT THEREOF

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendants Walltopia AD ("AD") and Safety Engineering OOD ("Safety") (collectively, the "Movants") file this Motion to Dismiss all claims Plaintiff asserts against Movants in Plaintiff's Amended Complaint based on lack of personal jurisdiction over Movants (the "Motion"). Alternatively, in the event the Court does not dismiss Plaintiff's claims for lack of personal jurisdiction, Movants request dismissal of Plaintiff's claims for fraudulent inducement and fraud pursuant to Fed. R. Civ. P. 12(b)(6), and respectfully show the Court as follows:

### SUMMARY

1. Movants are not subject to personal jurisdiction of this Court. Plaintiff attempts to avoid the complete lack of personal jurisdiction over Movants by alleging that Movants are alter egos of the party with which Plaintiff contracted—Walltopia Adventure USA, LLC ("Adventure"). Plaintiff's conclusory allegations fall well-short of the elevated standard it must meet to establish jurisdiction based on alter ego—the only basis for personal jurisdiction Plaintiff pled for Movants.

Indeed, Plaintiff's complaint contains no allegations which could support the exercise of general or specific jurisdiction over the Movants. Consequently, Plaintiff's claims against Movants must be dismissed.

2.     Moreover, Plaintiff's fraudulent inducement and fraud claims asserted against Movants should be dismissed. Plaintiff failed to state a claim upon which relief can be granted because: (1) Plaintiff failed to meet the heightened pleading requirements of Rule 9(b) for its claims for fraud and fraudulent inducement; and (2) Plaintiff's allegations regarding its claim for fraud negate the essential element of justifiable reliance because Plaintiff had actual knowledge of the alleged misrepresentations of which it complains. Consequently, Plaintiff's fraudulent inducement and fraud claims against Walltopia Adventure USA, LLC must be dismissed.

## ISSUES TO BE DECIDED

3.     This motion presents the following issues for the Court to decide:

i.     Whether Plaintiff's allegations demonstrate that Walltopia Adventure USA is an alter ego of foreign defendants Walltopia AD and Safety Engineering such that this Court may properly exercise personal jurisdiction over Walltopia AD and Safety Engineering under an alter ego theory of personal jurisdiction.

ii.    Whether Plaintiff's allegations of fraud and fraudulent inducement meet the heightened pleading standard required by Fed. R. Civ. P. 9.

iii.   Whether Plaintiff's admissions that it had actual knowledge of the falsity of the alleged fraudulent statements that form the basis of its fraud claim negate the essential element of justifiable reliance.

iv.    Whether Plaintiff's allegations show that any reliance on alleged fraudulent statements caused the damages it claims.

## INTRODUCTION

4.     Plaintiff contracted Walltopia Adventure USA to design and construct a roll glider, ropes course, and play structure on one of Plaintiff's cruise ships.  The installation of the equipment

was performed in Italy.  Plaintiff watched the work closely, "inspecting" and "investigating" on multiple occasions throughout the process.  Plaintiff's inspections, it claims, identified issues with the equipment that Plaintiff alleges one or more of the defendants represented had been fixed. Ultimately, Plaintiff elected to remove the equipment from its cruise ship and file this lawsuit, claiming the equipment was improperly installed and did not meet the required specifications.

5.      There is a dispute between Adventure and Plaintiff related to the equipment and Plaintiff's failure to pay for the equipment.  And Adventure is subject to personal jurisdiction in this Court.  But Plaintiff wants two other parties to participate in this lawsuit—Walltopia AD and Safety Engineering OOD. Those two parties, however, are Bulgarian entities with separate corporate registrations, separate bank accounts, separate management, and differing ownership. Adventure conducts business with the Movants, but when the entities engage in business with one another, they document their transactions and enter agreements that set forth their relationships.

6.      Plaintiff asks this Court to exercise jurisdiction over the two separate, foreign entities by determining that they operate as alter egos of Adventure.  To satisfy personal jurisdiction requirements, however, Plaintiff need establish a prima facia basis for the Court's exercise of personal jurisdiction over each defendant.  Plaintiff's allegations fall short of carrying that burden.

7.      Even if Plaintiff had sufficiently pled a prima facie case, Movants are not subject to personal jurisdiction in this Court because Movants and Adventure are not alter egos.  They are not alter egos because, *inter alia*, neither Walltopia AD nor Safety Engineering actually control Walltopia Adventure USA—the single most important fact that determines alter ego in the jurisdictional context.

8.      Because Walltopia AD and Safety Engineering are not subject to personal

jurisdiction in this Court, the Court should dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(2).

9.      Moreover, Plaintiff's allegations in support of its claims for fraudulent inducement and fraud fail to state a claim upon which relief can be granted.  Plaintiff's general reference to all defendants as "Walltopia" results in vague pleadings that cannot meet the heightened pleading standards of Fed. R. Civ. P. 9, which apply to those causes of action.  In attempting to state its claim for fraud, Plaintiff alleges that it investigated the allegedly false statements that underly that claim, and obtained actual knowledge of the alleged falsity of them.  That actual knowledge negates the essential element of fraud that requires Plaintiff to show justifiable reliance on a fraudulent statement.

10.     Finally, Plaintiff's fraud allegations fail to demonstrate any injury that arose from its claimed reliance on alleged misrepresentations.  The injury Plaintiff attributes to its fraud claim could not have been caused by the alleged misrepresentations according to Plaintiff's allegations in its Amended Complaint.  Plaintiff removed the equipment at issue because, Plaintiff alleges, the equipment was not constructed properly.  Accepting those allegations as true, it is impossible that alleged misrepresentations that issues on the installed equipment had been fixed or met safety standards caused removal of the equipment.  The equipment was removed *in spite* of the alleged misrepresentations, not *because* of them.  Accordingly, Plaintiff's claims for fraud and fraudulent inducement should be dismissed under Fed. R. Civ. P. 12(b)(6).

## **BACKGROUND**

### A.  The Contracts

11.     This case relates to two contracts between Plaintiff and Walltopia Adventure USA—the January 27, 2023 "Design Agreement", and the June 8, 2023 "Manufacturing

Agreement." True and correct copies of the Design Agreement and the Manufacturing Agreement are attached to this Motion as Exhibits 1-A and 1-B to the Declaration of Ivaylo Sotirov ("Sotirov Decl."). The Design Agreement and the Manufacturing Agreement both identify Walltopia Adventure USA as the party to the contracts. Neither agreement identifies Walltopia AD or Safety Engineering as a party:

> **THIS ARCHITECTURAL DESIGN AND ENGINEERING CONTRACT** ("Agreement") dated as of _____ January 27, 2023("Effective Date") is made by and between:
>
> **WALLTOPIA ADVENTURE USA**, a LLC company organized under the laws of the State of TX, whose registered office is at 985 TX-121 Business, Ste. 619, Lewisville, TX 75057, FEIN 81-4278418 ("Designer"),
>
> -and-
>
> **Company Name**: Princess Cruise Lines, Ltd., a company incorporated under the laws of Bermuda, having its principal place of business at 24305 Town Center Drive, Santa Clarita, CA 91355("Client") (each referred to as a "Party" and together referred to as the "Parties")

Design Agreement, p. 1.

> **THIS MANUFACTURING & SUPPLY CONTRACT** ("Agreement") dated as of June 8, 2023("Effective Date") is made by and between:
>
> **WALLTOPIA ADVENTURE USA**, a LLC company organized under the laws of the State of TX, whose registered office is at 985 TX-121 Business, Ste. 619, Lewisville, TX 75057, FEIN 81-4278418 ("Supplier"),
>
> -and-
>
> **Company Name**: Princess Cruise Lines, Ltd., a company incorporated under the laws of Bermuda, having its principal place of business at 24305 Town Center Drive, Santa Clarita, CA 91355("Client") (each referred to as a "Party" and together referred to as the "Parties")

Manufacturing Agreement, p. 1.

### B. Plaintiff's Pleadings

12. Plaintiff filed its original complaint (the "Complaint") in this Court on August 16, 2024. Movants accepted service of the Complaint on or about September 17, 2024. The parties initially agreed to set Movant's deadline to answer or otherwise respond as December 9, 2024

13.    Plaintiff alleged that the Court had jurisdiction over all named defendants in a single, conclusory allegation: "Walltopia[1] has contractually irrevocably submitted itself to the venue of this Honorable Court for purposes of any legal action brough under the Agreement that is the subject of this lawsuit."  Ct. Dkt. 1 – Pl.'s Original Compl., ¶ at 8 (hereinafter "Compl."). Plaintiff also included the conclusory statement that the Defendants "are merely alter egos of one another," and "acted as a single corporate entity, disregarding corporate distinctions, failing to observe corporate formalities, sharing common ownership and directorship, and comingling funds."  *Id.* at 6.

14.    Recognizing the insufficiency of its jurisdictional allegations, Plaintiff amended its Complaint ("Amended Complaint") on November 26, 2024.  In the Amended Complaint, Plaintiff attempted to address its inability to plead facts sufficient to establish jurisdiction over Movants. Plaintiff failed to do so.  The parties agreed to set Movant's deadline to answer or otherwise respond to the Amended Complaint as January 29, 2025.

## LEGAL AUTHORITY

15.    Rule 12(b)(2) of the Federal Rules of Civil Procedure contemplates dismissal of claims for "lack of personal jurisdiction." *See* Fed. R. Civ. P. 12(b)(2). As the party seeking to invoke the Court's jurisdiction, Plaintiff bears the burden of establishing a prima facie case for the Court's exercise of personal jurisdiction over all defendants.  *See Walk Haydel & Assocs., Inc. v. Costal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).  Although a plaintiff must "make out only a prima facie case supporting jurisdiction," in the absence of an evidentiary hearing, "[e]stablishing a *prima facia* case still requires the plaintiff to show the nonresident defendant's purposeful availment of the benefits and protections of and minimum contacts with the forum

---

[1] Plaintiff chose to define "Walltopia" to mean all three of the named defendants in this case.

state." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868-69 (5th Cir. 2001). Therefore, "[a] federal court sitting in Texas applies Texas law on personal jurisdiction." *Lloyd's Syndicate 457 v. Am. Glob. Mar. Inc.*, 346 F. Supp. 3d 908, 928 (S.D. Tex. 2018).

16.     Under Texas's long-arm statute, a court has personal jurisdiction over a foreign defendant "to the full extent allowed by the Due Process Clause of the Fourteenth Amendment." *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003). The Due Process Clause of the Fourteenth Amendment allows a court to exercise personal jurisdiction over a nonresident defendant only when "(1) that defendant has purposefully availed himself of the benefits of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). "Minimum contacts" requires a showing of either general or specific jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). A court has general jurisdiction when a nonresident defendant's contact with the forum state, although unrelated to the plaintiff's claims are "continuous and systematic." *Helicopteros Nacionales de Colom. S.A. v. Hall*, 466 U.S. 408, 416 (1984).  A court has specific jurisdiction over a nonresident defendant if the defendant "'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472 (citations omitted).

17.     The Court should dismiss Plaintiff's claims against Movants. Plaintiff wholly failed to allege any basis for the Court to exercise general or specific personal jurisdiction over Movants Instead, Plaintiff merely attempts to establish a prima facie case for personal jurisdiction over Movants through threadbare allegations that Movants are alter egos of Adventure.

18.    Still, if a plaintiff establishes a prima facie case for jurisdiction, the burden then shifts to the defendant to show that asserting jurisdiction would offend traditional notions of fair play and substantial justice. *Hess v. Bumbo Intern. Trust*, 954 F.Supp.2d 590, 593 (S.D. Tex. 2013).  In deciding a motion under Rule 12(b)(2), a court may consider "affidavits," *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985), and the court need not accept allegations "as true… to the extent that they are contradicted by defendant's affidavits." *Monkey Boy Graphix, Inc. v. Anton Sport, Inc.*, 2008 WL 11349966, at *7 (N.D. Tex. Aug. 20, 2008).

19.    Texas state law governs alter ego determinations which bear on the exercise of jurisdiction. *Licea v. Curacao Drydock Co., Inc.*, 952 F.3d 207, 212 (5th Cir. 2015). As a threshold matter, courts in Texas start with the presumption that entities are separate.  *TMX Fin. Holdings, Inc. v. Wellshire Fin. Servs., LLC*, 515 S.W.3d 1, 8 (Tex. App.—Houston [1st Dist.] 2016, pet. filed).  A plaintiff seeking to invoke personal jurisdiction on an alter ego basis must show that the parent entity actually "controls the internal business operations and affairs of the subsidiary" to such a degree that "the two entities cease to be separate[.]" *Lloyd's Syndicate*, 346 F.Supp.3d at 928 (quoting *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W3d 789, 799 (Tex. 2022) and *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 799 (Tex. 2002)).

20.    The mere ability to control the subsidiary is not enough.  Even a parent company's admission that it has the "ability to control substantially all matters of significance to the [subsidiary]" is not sufficient to invoke jurisdiction under an alter ego theory.  *TMX Fin.,* 515 S.W.3d at 12.  The ability to control is not actual control.

21.    The Texas Supreme Court has identified four factors to consider when determining whether a parent entity exercises a sufficient degree of control over is subsidiary for alter ego jurisdictional purposes – (1) the amount of the subsidiary's stock owned by the parent corporation;

(2) existence of separate headquarters; (3) the observance of corporate formalities; and (4) the degree of the parent's control over the general policy and administration of the subsidiary. *TMX Fin.*, 515 S.W.3d at 8.  The first three factors focus on "whether corporate structure is such that excessive control could occur, while the fourth measures actual control." *Id.*  The fourth factor is "most closely aligned with the ultimate question the factors address: actual control." *Id.*

22.    Because actual control is the "ultimate question," common ownership and shared headquarters are not sufficient without a showing of actual control. *Id.*  Similarly, common ownership and directorship is insufficient to demonstrate actual control. *Conner v. ContiCarriers & Terminals, Inc.*, 944 S.W.2d 405, 418–19 (Tex.App.—Houston [14th Dist.] 1997, no writ).

## ARGUMENTS AND AUTHORITIES

**A. Plaintiff failed to establish a prima facie case for personal jurisdiction over Walltopia AD and Safety Engineering because neither is a party to the contract Plaintiff relies upon to establish jurisdiction.**

23.    Plaintiff's sole basis for the assertion of personal jurisdiction over Movants is the allegation that "Walltopia"[2] contractually consented to personal jurisdiction in this Court. *See* Am. Compl. at ¶ 20.  Only Walltopia Adventure USA, however, is identified as party to the two contracts Plaintiff references in its Amended Complaint—the Design Agreement and the Manufacturing Agreement.  Am. Compl. at ¶ 37, and Sotirov Decl., Ex. 1-A, 1-B.

24.    Movants, however, are not identified as parties to the Design Agreement or the Manufacturing Agreement, where the alleged contractual consent to personal jurisdiction in this

---

[2] Jurisdictional allegations may not be vague, overgeneralized, or conclusory. *Head v. Las Vegas Sands, LLC*, 298 F.Supp.3d 963, 973 (S.D. Tex. 2018). To that end, Plaintiff must submit evidence supporting personal jurisdiction over each Defendant, and cannot simply address "defendants" generally, without specifying what facts apply to which defendant. *Id.* (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)).  By defining "Walltopia" to mean all named defendants, and then alleging generally that "Walltopia" undertook certain acts, Plaintiff failed to sufficiently specify which facts apply to which defendants.

Court appears.  The only way Plaintiff could survive this Motion to Dismiss, then, is if it pled and can show facts establishing a prima facie case for the Court's exercise of personal jurisdiction over both Walltopia AD and Safety Engineering by showing that each is an alter ego of Walltopia Adventure USA.

**B. Plaintiff failed to establish a prima facie case for alter ego personal jurisdiction over Movants because it did not allege that those entities exerted actual control over Adventure.**

25.    Plaintiff's efforts to demonstrate alter ego fall into three categories of allegations: (1) common sources of products; (2) common officers; and (3) conclusory allegations.  None of these categories, however, establish that either of the Movants exercised the level of control over Adventure required to establish the entities as alter egos of one another.

**i. Adventure's purchase of AD's products does not establish an alter ego relationship because it does not show that AD actually controls Adventure.**

26.    In largely conclusory fashion, Plaintiff complains that Adventure "funnels" purchases to AD (Am. Compl. ¶¶ 9, 13) and that Adventure's products are manufactured or produced by AD (Am. Compl. ¶¶ 14, 15).  The fact that Adventure does business with AD—or that it utilizes products produced by AD—does not support a finding of alter ego. *See Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983) (noting that although a subsidiary entity obtained raw materials it used from its parent entity such an arrangement, even among other factors, did not make the subsidiary an alter ego of the parent).

27.    The arrangement Plaintiff describes—a company predominantly selling just one other company's products—is far from uncommon.  North Texas contains its fair share of Ford dealerships, for example.  The Court would not likely be surprised if it learned that a local Ford dealership gets a statistically significant portion of its new car inventory from a single source—Ford, Inc. (or possibly one of its subsidiary companies).  Under Plaintiff's theory, Ford dealerships

would surely be alter egos of Ford, Inc., because the dealerships merely exist to "funnel" purchases

to Ford, Inc., who produces the products the dealership sells.

28.     Companies—even closely related companies—can do business with one another

without destroying their separateness.  Only when the parent company actually controls the

subsidiary can jurisdiction be based on alter ego. *TMX Fin.*, 515 S.W.3d at 8.  Adventure's use of

AD's products does not demonstrate that AD exercised any amount of actual control over

Adventure.

> **ii.    Plaintiff's allegations of common officers do not support the exercise of alter ego personal jurisdiction because Courts require more than common directorship to find actual control.**

29.      "A subsidiary corporation will not be regarded as the alter ego of its parent merely

because of stock ownership, a duplication of some or all of the directors or officers, or an exercise

of the control that stock ownership gives to stockholders." *Gentry v. Credit Plan Corp. of Houston*,

528 S.W.2d 571, 573 (Tex. 1975). Common ownership, even when combined with common

corporate officers, does not demonstrate that a parent and subsidiary are alter egos. *TMX Fin.*, 515

S.W.3d at 8–9.  Instead, the plaintiff must plead something more—a "plus" factor beyond the

subsidiary's mere presence within the bosom of the corporate family. *Id.* As the Texas Supreme

Court explains, the level of actual control over the subsidiary must rise to the level to be

"abnormal" or "atypical." *BMC Software Belg., N. V. v. Marchand*, 83 S.W.3d 789, 798 (Tex.

2002).

30.     Here, Plaintiff fails to make a single allegation of actual control of Adventure by

Movants.  Even if Plaintiff's conclusory allegation that Adventure could not exist or carry out daily

operations without Movants were true, it does not show that Movants exert any level of control

over Adventure, much less the level of control necessary to justify the exercise of personal

jurisdiction over Movants on an alter ego basis.  Plaintiff falls short of their heighted burden to prove alter ego as a basis for personal jurisdiction.

    iii.    **Plaintiff's conclusory allegations cannot support the exercise of personal jurisdiction over Movants.**

31.    The majority of Plaintiff's alter ego allegations are conclusory.  Conclusory allegations are insufficient to establish alter ego jurisdiction.  *Southern Bleacher Co. v. Husco, Inc.*, No. 7:01-CV-009-R, 2001 WL 497772, at *6 (N.D. Tex. May 7, 2001) (refusing to find personal jurisdiction on the basis of alter ego where plaintiff presented only "bald assertions and conclusory allegations," to determine how any of the alter ego factors might be met. *Id.*).

32.    Moreover, allegations that Movants are somehow intertwined with each other does not demonstrate that either (or both) of them is an alter ego of Adventure.  *See* Am. Compl. ¶¶ 10, 11.  Plaintiff alleges, for example, that "Safety Engineering OOD and Walltopia AD share the same corporate headquarters and offices as well as production plants in Bulgaria." *Id.* at ¶ 11.  But the question facing this Court is whether Adventure is an alter ego of Safety Engineering and Walltopia AD—not whether Safety Engineering and Walltopia AD are alter egos of one another.[3]

33.    Finally, Plaintiff alleges that the lack of corporate separateness between the Defendants was evidenced when Walltopia Adventure USA requested that Plaintiff make payment to Walltopia Adventure USA and not to Walltopia AD and Safety Engineering.  Am. Compl. at ¶ 17.  As shown above, Walltopia Adventure USA is the entity identified as the party to the Manufacturing Agreement and the Design Agreement. *Supra*, ¶ 11. It would make sense, then, that Walltopia Adventure USA would receive payment under either of those agreements.  Even so,

---

[3] Plaintiff's allegations that Safety Engineering advertises that Walltopia AD is responsible for sales, distribution, and project management falls into the same category.  (Am. Compl. at ¶10).  Those allegations have nothing to do with Walltopia Adventure USA.

Plaintiff's allegation actually supports the conclusion that the parties maintain corporate separateness—if they were alter egos, it would not matter which entity received payment.  Instead, Plaintiff's allegation suggests that it did matter which entity received payment because the companies are truly separate.

### C. No legal or factual bases exist that warrant this Court's exercise of personal jurisdiction over Movants.

34.    In support of this Motion, Movants submit the Declaration of Ivaylo Sotirov ("Sotirov Decl.").  Mr. Sotirov's declaration establishes that Walltopia AD, Safety Engineering, and Walltopia Adventure USA:

    a.  Were each formed separately in their respective jurisdictions (Bulgaria for Movants, and Texas for Adventure) (Sotirov Decl. ¶ 4);

    b.  Maintain separate entity registrations in their respective jurisdictions (*Id.*);

    c.  File separate tax returns (*Id.* at ¶ 5);

    d.  Maintain separate bank accounts (*Id.* at ¶ 6);

    e.  Maintain separate insurance coverages (*Id.* at ¶ 7);

    f.  Create and utilize separate budgets (*Id.* at ¶ 8); and

    g.  Maintain separate books and accounting records (*Id.* at ¶ 9).

35.    When Adventure conducts business with either of the Movants, the parties operate under written agreements governing their interactions.  (Sotirov Decl. ¶ 10).  The assets of Adventure are not commingled with the assets of either of the Movants. (*Id.* at ¶ 11).

36.    Adventure maintains its offices in Lewisville, Texas, while Movants maintain their offices in Bulgaria. (*Id.* at ¶ 12).

37.    Decisions about the daily operations of Adventure are made by Yasen Nikolov, the General Manager of Adventure.  (*Id.* at ¶ 13).  Contrary to Plaintiff's allegations, neither Ivaylo

Penchev nor Metin Musov are the CEO of Adventure.  (*Id.*).

38.     Adventure has its own management, sales team, and project management.  (*Id.* at ¶ 14).  Those employees receive compensation payments from Adventure. (*Id.*).

39.     Adventure's sales team is responsible for its marketing and sales strategies, and decisions regarding those strategies are made by Adventure's employees. (*Id.* at ¶ 15).

40.     Adventure is solely responsible for determining what products and what quantities of products it orders from suppliers, including from AD.  (*Id.* at ¶ 16).

41.     Under any of the measures found in relevant case law, the foregoing facts make clear that Adventure, Walltopia AD, and Safety Engineering OOD, are not the alter egos of one another.

42.     Movants request that the Court dismiss Plaintiff's claim against Movants. Plaintiff has pled no facts to support the Court's exercise of jurisdiction over Movants. Accordingly, the Court should dismiss the claims against Movants for lack of personal jurisdiction pursuant to Fed. R. Civ. P 12(b)(2).

## MOTION TO DISMISS UNDER RULE 12(b)(6)

Movants request in the alternative that the Court dismiss Plaintiff's fraudulent inducement and fraud claims in Plaintiff's Amended Complaint based on Plaintiff's failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## 12(b)(6) STANDARD

43.     A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint must "amplify a claim with some factual allegations

in those contexts where such amplification is needed to render the claim plausible." *Id.* at 670. "[T]o enter the realm of plausible liability[,]" a complaint must satisfy two hurdles. *Twombly*, 550 U.S. at 557 n. 5.

44.     To clear the initial hurdle, a plaintiff must frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled relief. *Id.* at 556.  As to what constitutes sufficient "factual matter," the Supreme Court has cautioned that a legal conclusion is not transformed into a factual allegation merely because a complaint represents its conclusions as facts. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  To clear the second hurdle, the factual allegations must do more than claim conduct "merely consistent" with actionable wrongdoing. *Iqbal*, 556 U.S. at 678.

45.     "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *In re MasterCard Intern. Inc.*, 313 F.3d 257, 261 (5th Cir. 2002).  In short, a claim should be dismissed when the complaint is devoid of facts necessary for the plaintiff to prevail under the cause of action asserted, or when the complaint itself discloses facts that necessarily defeat the causes of action pled.

46.     In most cases, the claimant need only plead "enough facts to state a claim for relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Additionally, rule 9(b), imposes a heightened standard when, as in this case, the plaintiff alleges fraud.  For those claims, the pleadings "must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  If the pleading falls short of rule 9(b)'s standard, dismissal under rule 12(b)(6) is appropriate.  *See, e.g. Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

47.     To prove fraud, Plaintiff must show that (1) a specific defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce Plaintiff to act upon the representation; and that (4) Plaintiff actually and justifiably relied upon the representation and suffered injury as a result." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018).

48.     The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (quoting *Herrmann Holdings, Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)).  In other words, the pleading must contain "'the who, what, when, where, and how' of the events at issue." *Id.*  (quoting *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)); *Molina-Aranda v. Black Magic Enterprises, L.L.C.*, 983 F.3d 779, 784 (5th Cir. 2020).

49.     Particularly relevant to this case, "general allegations, which lump all defendants together failing to segregate the alleged wrongdoing of one from those of another do not meet the requirements of Rule 9(b)." *In re Urcarco Sec. Lit.*, 148 F.R.D. 561, 569 (N.D.Tex. 1993), aff'd *Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994).

50.     Furthermore, actual knowledge of the purported falsity of a misrepresentation is inconsistent with a claim that the defrauded party has been deceived, and it negates the essential element of a claim for fraud—reliance upon the truth of the representation. *Mayes v. Stewart*, 11 S.W.3d 440, 451 (Tex.App.—Houston [14th Dist.] 2000, pet. denied), *disapproved on other grounds by Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136 (Tex. 2019).

## 12(b)(6) ARGUMENTS AND AUTHORITIES

51.    To begin, Plaintiff's allegations lumping all defendants together as "Walltopia" do not meet the requirements of Rule 9(b). *Urcarco*, 148 F.R.D. at 569.  By referring to all named defendants as "Walltopia," Plaintiff fails to tell the Court and the defendants exactly what Plaintiff contends which defendant allegedly misrepresented.  Under the law of the Fifth Circuit, such pleadings fail to state a claim for fraud. For this reason, Movants seek dismissal of the Plaintiff's claims for fraudulent inducement and for fraud.

52.    Plaintiff's only allegation of reliance is that it relied on an inspector's certificate (the "TUV Certificate") "to determine the safety and adequacy of the Activity Elements."  Am. Compl. at ¶ 133.  Plaintiff contends the TUV Certificate was issued based on representations Walltopia made regarding the condition of the equipment at issue.  Plaintiff's other allegations, however, undercut its conclusory allegation of reliance on the TUV Certificate.

53.    In fact, Plaintiff's fraud allegations clearly demonstrate that Plaintiff did not rely on Movants' representations or on the TUV Certificate. Instead, Plaintiff "inspected" and "investigated" every claimed false representation: [4]

| Claimed Misrepresentation | Plaintiff's Investigation |
|---|---|
| TUV issued a certificate of compliance for Roll Glider. (Am. Compl. at ¶ 118) | "Princess's inspection and investigation revealed" issues with the RollGlider. (¶ 119) |
| Written confirmation that subject safety violations were corrected. (¶ 124) | "Upon inspection," Plaintiff determined the safety violations were not corrected. (¶ 125) |
| Two poles had been removed. (¶ 126. a.) | "Princess's inspection revealed" they had not. (¶126. a.) |
| Confirmed openings complied with standards (¶ 126. b.) | "Princess's inspections revealed" differently. (¶ 126. b.) |

---

[4] All citations in the following chart refer to the cited paragraph of the Amended Complaint.

| | |
|---|---|
| Signed off that no-climb nets were installed. (¶ 126. c.) | "Princess's investigation revealed" no-climb nets were missing. (¶ 126. c.) |
| Signed off on effective distances between net structure. (¶ 126. d.) | "Princess's investigation revealed" different distances. (¶ 126. d.) |
| Signed off that openings had been covered. (¶ 126. e.) | "Princess's investigation" revealed that not all openings were covered. (¶ 126. e.) |
| TUV approved the Activity Element on June 20, 2024. (¶ 128) | "Upon inspection," the Ropes Course was deficient. (¶ 129) |

54.     Plaintiff's allegations demonstrate that Plaintiff did not rely on any of the claimed misrepresentations.  Quite the opposite, Plaintiff "inspected" and "investigated" every claimed misrepresentation.  *See generally*, Am. Compl. ¶¶ 118–129.  Taking it even further, Plaintiff alleges that it *actually identified* the misrepresentations (*Id.*), notified "Walltopia" of the purportedly false nature of the representations (*Id.* at ¶ 121), and, ultimately, removed the equipment from the ship because it was allegedly "unsafe and unacceptable" (*Id.* at ¶ 30).

55.     During the time Plaintiff was supposedly relying on the misrepresentations in its Amended Complaint, it "notified Walltopia in writing of its default of the Agreement on June 19, 2024" (*Id.* at ¶ 51) and terminated the agreement on July 17, 2024 (*Id.* at ¶ 53).  Taken as true, Plaintiff's substantive factual allegations make clear that Plaintiff not only did not rely on the alleged misrepresentations, but it also investigated every representation, acquired actual knowledge of the claimed falsity of the representations, and terminated the contract based on the actual knowledge it acquired.  Plaintiff's actual knowledge of the purported falsity of the statements forming the basis of its fraud claim negates the essential element of reliance upon the truth of the representation at issue. *See Koral Indus., Inc. v. Security–Connecticut Life Ins. Co.,* 788 S.W.2d 136, 146 (Tex.App.—Dallas), *writ denied,* 802 S.W.2d 650 (Tex. 1990).

56.    Even if Plaintiff could show it took some action in reliance on the claimed misrepresentations, its claimed damages did not stem from any such reliance. Plaintiff claims its compensatory damages for fraud include "removal costs, re-construction costs, lost revenue, lost goodwill, [and] consequential" damages.[5] Am. Compl. at ¶ 136. Plaintiff does not tie those damages to the claimed misrepresentations. Nor could it. Plaintiff alleges the equipment at issue was removed because it was not constructed in accordance with applicable safety standards and was not in compliance with the agreements it entered into with Walltopia Adventure USA. (*E.g.*, Am. Compl. at ¶ 49). In other words, Plaintiff alleges the equipment was removed because it did not meet required standards. But the equipment had been constructed by the time Plaintiff alleges one or more of the defendants made misrepresentations about whether the already-constructed equipment met required standards. Whether one or more of the defendants said "the equipment meets required standards" or not, Plaintiff's allegations demonstrate that it was going to remove the equipment either way. Accordingly, any purported reliance on the alleged misrepresentations could not possibly have caused the damages Plaintiff alleges it suffered.

57.    Movants request that the Court dismiss Plaintiff's fraud and fraudulent inducement claims against Movants. Plaintiff has (1) failed to meet Rule 9(b)'s heighted pleading requirements; and (2) fails to fulfil the essential element of justifiable reliance. Accordingly, the Court should dismiss Plaintiff's fraudulent and inducement and fraud claims against Movants, pursuant to Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

WHEREFORE, premises considered, Movants respectfully request that this Court grant

---

[5] Plaintiff also seeks exemplary damages, which are not compensatory, but punitive. Am. Compl. at ¶ 136.

this Motion to Dismiss, dismissing Plaintiff's claims against Walltopia AD and Safety Engineering OOD in their entirety under Fed. R. Civ. P. 12(b)(2), and, alternatively, dismissing Plaintiff's claims for fraudulent inducement and fraud claims under Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

**GRAY REED**

By: _/s/ Russell E. Jumper_
RUSSELL E. JUMPER
State Bar No. 24050168
rjumper@grayreed.com
DRAKE M. RAYSHELL
State Bar No. 24118507
drayshell@grayreed.com
1601 Elm Street, Suite 4600
Dallas, Texas  75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system on January 29, 2025, which will send notification to the attorney(s) of record for all parties to this suit.

_/s/ Russell E. Jumper_
RUSSELL E. JUMPER