# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| PRINCESS CRUISE LINES, LTD., § | |
| § | |
| *Plaintiff*, § | |
| v. § | |
| § | Civil Action No. 4:24-cv-745 |
| WALLTOPIA ADVENTURE USA, § | Judge Mazzant |
| LLC, WALLTOPIA AD, and SAFETY § | |
| ENGINEERING OOD, § | |
| § | |
| *Defendants*. § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Walltopia AD and Safety Engineering OOD's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) and Alternative Motion to Dismiss for Failure to State a Claim Upon which Relief can be Granted Pursuant to Rule 12(b)(6) and Brief in Support Thereof (the "Motion") (Dkt. #15). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

## BACKGROUND

Plaintiff, Princess Cruise Lines, Ltd. ("Plaintiff")—a Bermuda corporation with its principal place of business in California—operates premium cruise line services, with destinations across the world (Dkt. #9 at ¶¶ 1, 22). This lawsuit arises from Walltopia Adventure USA, LLC ("Walltopia USA"), Walltopia AD ("AD"), and Safety Engineering OOD's ("Safety") (collectively, the "Walltopia Defendants") purportedly defective and dangerous design, manufacturing, and installation of "family-centered cruise adventure activities" on one of Plaintiff's newest ships (the "Activity Elements") (Dkt. #9 at ¶¶ 6, 21). Walltopia USA is a limited liability company organized under Texas law with its principal place of business in Frisco, Texas,

and its sole member is domiciled in Frisco, Texas (Dkt. #9 at ¶¶ 2–3). AD and Safety are foreign companies organized under the laws of the Republic of Bulgaria (Dkt. #9 at ¶¶ 4–5).

There are three contracts at issue in this dispute: (1) a Design Agreement between Plaintiff and Walltopia USA, executed on January 27, 2023 (the "Design Agreement") (Dkt. #15-1 at pp. 6–20); (2) a Manufacturing Agreement between Plaintiff and Walltopia USA, executed on June 8, 2023 (the "Manufacturing Agreement") (Dkt. #15-1 at pp. 22–34); and (3) a proposed, unexecuted Assignment and Substitution Agreement (the "Substitution Agreement") (Dkt. #20-1 at pp. 5–6). On March 26, 2024, the Walltopia Defendants sent the Substitution Agreement to Plaintiff for review, which attempted to substitute Walltopia USA for AD and Safety as the suppliers under the Manufacturing Agreement (Dkt. #9 at ¶ 17; Dkt. #20-1 at p. 3–7). Although the Substitution Agreement was never finalized or executed by any party, AD and Safety submitted invoices and an audit letter to Plaintiff for payments due to them as "suppliers" under the Manufacturing Agreement (Dkt. #20 at pp. 5-6; Dkt. 20-1 at pp. 8–11). Only the Design Agreement and Manufacturing Agreement (the "Design and Manufacturing Agreements") were negotiated and fully executed by Walltopia Defendants' common Chief Executive Officer (Dkt. #9 at ¶2; Dkt. #15-1 at pp. 6–34). As executed, the Design and Manufacturing Agreements included identical forum-selection clauses which stated: "The Parties agree that the Texas courts shall have exclusive jurisdiction for the purpose of hearing and determining any suit, action or proceedings and/or to settle any disputes arising out of or in any way relating to this Agreement or its formation or validity" (the "Texas Forum-Selection Clauses") (Dkt. #15-1 at pp. 13, 27).

Plaintiff alleges Walltopia Defendants defaulted under the Design and Manufacturing Agreements by installing defective Activity Elements (Dkt. #9 at ¶ 26). Plaintiff further alleges

2

Walltopia Defendants lied to it and fraudulently induced Plaintiff to accept the defective Activity Elements (Dkt. #9 at ¶¶ 97–114). Plaintiff ultimately terminated the Design and Manufacturing Agreements on July 17, 2024 (Dkt. #9 at ¶ 53).

On August 16, 2024, Plaintiff filed suit against Walltopia Defendants in Texas pursuant to the Texas Forum-Selection Clauses (Dkt. #1; Dkt. #15-1 at pp. 13, 27). On November 26, 2024, Plaintiff filed its Amended Complaint, and in addition to outlining its causes of action, Plaintiff alleged the Walltopia Defendants—Walltopia USA, AD, and Safety—are alter egos of one another; specifically, Walltopia Defendants purportedly act as a single corporate entity, disregarding corporate distinctions, failing to observe corporate formalities, sharing common ownership and directorships, and comingling of funds (Dkt. #9 at ¶ 6). Plaintiff further alleged the following: (1) Walltopia USA, AD, and Safety share a common Chief Executive Officer; (2) Walltopia USA and AD share a common website and products; (3) all purchases made from Walltopia Defendants are processed through AD; (4) Walltopia USA and AD share the same pool of employees and departments; (5) AD and Safety share the same corporate headquarters, offices, and production plants; (6) AD serves as the parent entity to Walltopia USA and Safety, and both cannot operate without AD; and (7) through the Substitution Agreement, Walltopia USA requested to substitute itself for AD and Safety as the supplier under the Manufacturing Agreement (Dkt. #9 at ¶¶ 7–17).

On January 29, 2025, Defendants AD and Safety ("Movants") filed their Motion to Dismiss under Rules 12(b)(2) and 12(b)(6) (Dkt. #15). On March 5, 2025, Plaintiff filed its Response (Dkt. #20). On April 2, 2025, Movants filed their Reply (Dkt. #30). On April 23, 2025, Plaintiff filed its Sur-Reply (Dkt. #36). The Motion is now ripe for adjudication.

## LEGAL STANDARD

### A. Rule 12(b)(2) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that *in personam* jurisdiction exists. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir. 1989)).

To satisfy that burden, the party seeking to invoke the court's jurisdiction must "present sufficient facts as to make out only a prima facie case supporting jurisdiction," if a court rules on a motion without an evidentiary hearing. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). When considering the motion to dismiss, "[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits." *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)); *accord Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977). Further, "[a]ny genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a prima facie case exists." *Id.* (citing *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 161, 1067 (5th Cir. 1992)). However, if a court holds an evidentiary hearing, a plaintiff "must establish jurisdiction by a preponderance of the admissible evidence." *In re Chinese Manufactured Drywall Prods. Liab. Lit.*, 742 F.3d 576, 585 (5th Cir. 2014) (citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008)).

A court conducts a two-step inquiry when a defendant challenges personal jurisdiction. *Ham v. La Cinega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). First, absent a controlling federal

statute regarding service of process, the court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant. *Id.* And second, the court establishes whether the exercise of jurisdiction is consistent with due process under the United States Constitution.

The Texas long-arm statute confers jurisdiction to the limits of due process under the Constitution. *Command-Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). Therefore, the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees. *Bullion*, 895 F.2d at 216. The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). Minimum contacts with a forum state can be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

General jurisdiction exists only when the defendant's contacts with the forum state are so "'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also Cent. Freight Lines v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citing *Helicopteros Nacionales de Colum., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). Substantial, continuous and systematic contact with a forum is a difficult standard to meet and requires extensive contacts between a defendant and the forum. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit

was filed." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1992) (citation omitted). However, "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 609 (citing *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 596 (5th Cir. 1999)).

Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *Helicopteros*, 466 U.S. at 414 n.8. For the court to exercise specific jurisdiction, the court must determine "(1) whether the defendant has ... purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Defendants who "'reach out beyond one state' and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for consequences of their actions." *Burger King Corp.*, 471 U.S. at 475 (quoting *Travelers Health Assoc. v. Virginia*, 339 U.S. 643, 647 (1950)). Establishing a defendant's minimum contacts with the forum state requires contacts that are more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id*.

"If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). In this inquiry, the Court examines five factors: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the

plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. *Burger King*, 471 U.S. at 477. "It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

  **B.** **Rule 12(b)(6) Motion to Dismiss**

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen,* 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id*. "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Movants ask the Court to Dismiss Plaintiff's claims because the Court lacks personal jurisdiction over Movants under Rule 12(b)(2), and alternatively, Movants ask the Court to Dismiss Plaintiff's claims for fraudulent inducement and fraud because Plaintiff failed to state a claim upon which relief can be granted under Rule 12(b)(6) (Dkt. #15). The Court will address both arguments in turn.

### I.    12(b)(2) Motion to Dismiss

Movants urge the Court to dismiss the case under Rule 12(b)(2) for the following reasons: (1) Plaintiff failed to establish a prima facie case for personal jurisdiction over Movants because neither AD or Safety are a party to the Design and Manufacturing Agreements containing the Texas

Forum-Selection Clauses; (2) Plaintiff failed to establish a prima facie case for alter ago personal jurisdiction over Movants because it did not allege that those entities exerted actual control over USA; and (3) no legal or factual bases exist that warrant this Court's exercise of personal jurisdiction over Movants (Dkt. #15 at pp. 9–14).

### A.  Forum-Selection Clauses

The Court will begin by addressing Movants' first argument related to the Texas Forum-Selection Clauses found in the Design and Manufacturing Agreements. An enforceable forum-selection clause may determine whether personal jurisdiction exists. *Franlink Inc. v. BACE Servs., Inc.*, 50 F.4th 432, 438–39 (5th Cir. 2022). The closely related doctrine has been used to interpret forum-section clauses; specifically, the closely related doctrine may bind non-signatories to a forum-selection clause when the party objecting to the court's jurisdiction is "closely related to the dispute such that it becomes foreseeable that it will be bound." *Id*. at 441 (citation modified). In determining whether non-signatories are closely related to the contractual dispute, a court may consider the following factors: "(1) common ownership between the signatory and the non-signatory, (2) direct benefits obtained from the contract at issue, (3) knowledge of the agreement generally and (4) awareness of the forum selection clause particularly." *Id*. at 442. Common ownership is a key factor supporting the application of the closely related doctrine. *Id*. at 443. If the court finds that a non-signatory defendant can be bound by a forum-selection clause, then the court can find it has personal jurisdiction over the non-signatory defendant. *Id*. at 443.

The Court has previously applied the closely related doctrine to a forum-selection clause that formed the basis for a motion to dismiss for improper venue. *See Huawei Techs. Co. v. Yiren Huang*, No. 4:17-CV-00893, 2018 WL 1964180 (E.D. Tex. Apr. 25, 2018). In that case, the Court found a valid and enforceable forum-selection clause in an employment agreement and denied the

9

non-signatory's motion to dismiss for improper venue. *Id.* at *9. The Court reasoned because the non-signatory defendant objecting to venue was "inextricably intertwined" and "closely related" with the signatories such that it was foreseeable it would be bound to the terms of the forum-selection clause, the non-signatory should be subject of the forum-selection clause, and the clause can be enforced against it. *Id.* at *10 (citing *Red Barn Motors, Inc. v. Nextgear Cap., Inc.*, No. 13-0078-BAJ-RLB, 2014 WL 4986674, at *5–6 (M.D. La. Sept. 29, 2014); *Excel Mktg. Sols., Inc. v. Direct Fin. Sols.*, LLC, No. 3:11-cv-109-D, 2011 WL 1833022, at *6 (N.D. Tex. May 13, 2011); *Alt. Delivery Sols., Inc. v. R.R. Donnelley & Sons Co.*, No. Civ.SA05CA0172-XR, 2005 WL 1862631, at *15–16 (W.D. Tex. July 8, 2005); *Tex. Source Grp., Inc. v. CCH, Inc.*, 967 F. Supp. 234, 237 (S.D. Tex. 1997)).

Here, Movants do not contest there was a bargained for, negotiated, and enforceable forum-selection clause between Plaintiff and Walltopia USA in the Design and Manufacturing Agreements, which required that Plaintiff and Walltopia USA resolve any disputes related to agreements in Texas (Dkt. #15 at p. 9; Dkt. #30 at p. 3). However, Movants argue that because they did not execute the Design and Manufacturing Agreements and did not bargain for, negotiate, or ultimately agree to the Texas Forum-Selection Clauses, the Court lacks personal jurisdiction over Movants (Dkt. #30 at p. 3). Plaintiff disagrees (Dkt. #20 at pp. 2, 16–17).

The Court will follow the Fifth Circuit's closely related doctrine analysis to determine whether it can exercise personal jurisdiction over Movants as non-signatories to the Texas Forum-Selection Clauses in the Design and Manufacturing Agreements at issue. *Franlink*, 50 F.4th 432 at 442. First, there is common ownership between the signatory, Walltopia USA, and the non-signatories, Movants. Specifically, AD serves as the parent entity to Walltopia USA and Safety,

10

and both Walltopia USA and Safety cannot operate without AD (Dkt. #9 at ¶¶ 12–13). The Walltopia Defendants also share a common Chief Executive Officer (Dkt. #9 at ¶ 7), and Walltopia USA and AD share a common website, products, and the same pool of employees and departments (Dkt. #9 at ¶¶ 8, 10). As such, Plaintiff has sufficiently alleged there is common ownership between Walltopia USA, the signatory, and the Movants, the non-signatories.

Second, Movants directly benefited from the Design and Manufacturing Agreements at issue by submitting invoices and an audit letter to Plaintiff for payments due to them as suppliers under the Manufacturing Agreement, and Movants accepted this payment (Dkt. #20-1 at pp. 8–11). Thus, Movants directly and economically benefited from the work completed pursuant to the Design and Manufacturing Agreements (Dkt. #20 at pp. 5–6; Dkt. #36 at pp. 3–4). Third, it can be inferred that Movants had general knowledge of the Design and Manufacturing Agreements at issue in this lawsuit because Walltopia Defendants share a common Chief Executive Officer who executed the Design and Manufacturing Agreements, on behalf of Walltopia USA, and consented to the Texas Forum-Selection Clauses (Dkt. #15-1 at pp. 6–34). Moreover, Walltopia USA and AD share a common website, products, and the same pool of employees and departments that services the Design and Manufacturing Agreements, and Movants accepted payments pursuant to the Design and Manufacturing Agreements as suppliers on behalf of Walltopia USA (Dkt. #9 at ¶¶ 8–11; Dkt. #20 at pp. 5–6; Dkt. #36 at pp. 3–4). Thus, Plaintiff sufficiently alleged Movants enjoyed economic benefits from the Design and Manufacturing Agreements and had general knowledge thereof.

Lastly, fourth, Movants had awareness of the forum-selection clause at issue, particularly, because Walltopia Defendants' Chief Executive Officer was the corporate representative that

bargained for, negotiated, and executed the Design and Manufacturing Agreements containing the Texas Forum-Selection Clauses (Dkt. #9 at ¶¶ 8–11; Dkt. #15-1 at pp. 6–34; Dkt. #30 at p. 3). Thus, the facts, resolved in favor of Plaintiff, establish Movants are closely related to the Design and Manufacturing Agreements and can be bound to the applicable Texas Forum-Selection Clauses. *Jones*, 954 F.2d at 1067.

Because Plaintiff has met its burden to establish that *in personam* jurisdiction exists as to Movants based on the Texas Forum-Selection Clauses in the Design and Manufacturing Agreements, the Court will not address Defendants second and third arguments, requiring minimum contacts and alter ego analyses (Dkt. #15 at pp. 10–14). Accordingly, dismissal for lack of personal jurisdiction is unwarranted, and Movants' Rule 12(b)(2) Motion should therefore be **DENIED**.

## II.     12(b)(6) Motion to Dismiss

On January 29, 2025, Walltopia USA individually filed its Motion to Dismiss for Failure to State a Claim Pursuant to Rule 12(b)(6) and Brief in Support Thereof (Dkt. #16). On August 22, 2025, the Court entered its Memorandum Opinion and Order (the "Walltopia USA Order") denying Walltopia USA's Motion and held Plaintiff stated plausible claims for relief sufficient to defeat a Rule 12(b)(6) motion (Dkt. #45).

After reviewing Plaintiff's Complaint, the arguments presented in the briefs, and for the same reasons outlined in the Walltopia USA Order, the Court finds that Plaintiff has stated plausible claims for relief under Rule 12(b)(6) for its fraudulent inducement and fraud causes of action as to Movants. Accordingly, dismissal is unwarranted, and Movants' Rule 12(b)(6) Motion should therefore be **DENIED**.

## CONCLUSION

It is therefore **ORDERED** that Defendants Walltopia AD and Safety Engineering OOD's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) and Alternative Motion to Dismiss for Failure to State a Claim Upon which Relief can be Granted Pursuant to Rule 12(b)(6) and Brief in Support thereof (Dkt. #15) are hereby **DENIED**.

**IT IS SO ORDERED.**

SIGNED this 18th day of September, 2025.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE